UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MEDPRICER.COM, INC.,

        Plaintiff,

v.

BECTON, DIXON AND COMPANY,

        Defendant.

No. 3:13-cv-1545 (MPS)

## RULING ON MOTIONS

By Order dated March 6, 2017 (ECF No. 95), I granted in part and denied without prejudice in part Defendant Becton, Dickinson and Company's ("Becton") Motion for Summary Judgment and denied without prejudice Plaintiff MedPricer.com, Inc.'s ("MedPricer") Motion for Summary Judgment. (ECF Nos. 62, 70.) Now pending is Plaintiff's Motion for Reconsideration (ECF No. 96) and a response from the Defendant that I construe as a renewed Motion for Summary Judgment. (ECF No. 102.) For the reasons set forth below, reconsideration is GRANTED in part and DENIED in part, but all the relief sought is DENIED, and Becton's Renewed Motion for Summary Judgment as to Children's Hospital of Alabama is GRANTED.

    **I.    Motion for Reconsideration**

Rule 7(c) of the Local Rules of Civil Procedure of the District of Connecticut authorizes motions for reconsideration. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an

issue already decided." *Id.* Motions for reconsideration may not be used to supplement the record. *Smith v. New York City Dept. of Educ.*, 524 Fed. Appx. 730, at *3 (2d Cir. May 2, 2013) ("Smith also sought to supplement record, which is inappropriate on a motion for reconsideration."). "A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency" of the underlying motion. *Palmer v. Sena*, 474 F. Supp. 2d 353, 355 (D. Conn. 2007) (citation omitted).

MedPricer makes three arguments why the Court should reconsider its decision, and all three fail. First, MedPricer argues that the Court failed to consider "controlling Second Circuit precedent" that requires evidence of a scienter to establish a violation of the Anti-Kickback Statute ("AKS"). As I suggested in the summary judgment ruling, however, this argument misapprehends the nature of a contract illegality defense, which calls for a different inquiry than whether the government can prove all the elements of a criminal statute. The reason courts do not enforce illegal contracts is that doing so would harness their enforcement powers in the service of an arrangement that violates public policy. The Supreme Court put it this way:

> There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law…. The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract…. To permit a recovery in [such a] case is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, only on account of the public interest.

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77-78 (1982). The law of Connecticut – which the parties in this case chose to govern their agreement – is the same. *Dowling v. Slotnik*, 244 Conn. 781, 808 (1998) ("[I]t is in order to effectuate an underlying public policy, rather than to sanction a

party seeking to enforce an illegal contract, that courts refuse to lend assistance to those who have contributed to the illegality that taints the contract.").

The principal public policy behind the AKS is the protection of the public fisc. *United States v. Bay State Ambulance and Hosp. Rental Svc., Inc.*, 874 F.2d 20, 32 & n. 21 (1st Cir. 1989). An agreement may violate that policy even if the parties did not harbor a "'bad purpose to disobey or to disregard the law,'" *United States v. Mittal*, 36 Fed. Appx. 20, 21 (2d Cir. 2002) (quoting district court's jury instruction), because the fiscal impact of an agreement does not depend on whether the parties entered into it with a "bad purpose."[1]

The statutory language Congress chose to implement its policy of protecting the public fisc was broad and prophylactic, with the result that arrangements may violate the AKS – and thus be contrary to public policy – without proof that they actually harm the public fisc. *Bay State Ambulance and Hosp. Rental Svc.*, 874 F.2d at 32 n. 21 ("Although the reason for enacting the statute was to prevent drains on the public fisc, the statute does not require that there be a drain on the public fisc in order for payments to be illegal."). As I explained in the summary judgment ruling, the agreement between the parties in this case falls within the AKS's broad language and thus violates public policy as formulated by Congress. *Cf. Hurd v. Hodge*, 68 S. Ct. 847, 853 (1948)("The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of *the public policy of the United States as manifested in ... federal statutes* ...." (emphasis added)).

It is true, of course, that while Congress chose to describe in broad terms the types of arrangements that implicate the public policy it sought to promote, it also chose to mitigate the impact of its ban on prohibited "remuneration" by creating statutory safe harbors, authorizing the

---

[1] *Mittal*, the only "Second Circuit precedent" cited by MedPricer, is a criminal case that does not address the enforceability of a contract.

Office of the Inspector General of the Department of Health and Human Services ("OIG") to create additional regulatory safe harbors, and further authorizing the OIG to issue advisory opinions with respect to specific arrangements.  It is also true that before the Department of Justice could secure criminal penalties for any prohibited "remuneration," Congress required it to prove that the parties acted "knowingly and willfully."  But neither of these features of the statute helps MedPricer here.  In the summary judgment proceedings, MedPricer never suggested that it qualified for any safe harbors (more on this below), and MedPricer has not sought an advisory opinion from the OIG.  And whether the parties acted knowingly and willfully has no bearing on whether their agreement involves payment of the type of "remuneration" described by the statute and, thus, whether it violates the public policy of protecting the public fisc that Congress sought to promote.  Accordingly, whether the parties to such an agreement acted knowingly and willfully also has no bearing on its enforceability.[2]

MedPricer also argues, for the first time, that there "was no evidence in the record of a non-fair market value payment," which MedPricer says was "necessary to establish the receipt of remuneration."  (ECF No. 96-1 at 1.)  This is a new legal theory – one not mentioned in the summary judgment briefs or at oral argument, where both parties apparently assumed that the

---

[2] Were I to accept MedPricer's argument to the contrary, I could be required to enforce the agreement even if the OIG *had* opined that it involved the payment of prohibited remuneration and posed a serious risk of fraud and abuse; an OIG advisory opinion does not address the subjective intent of the parties and thus would not speak to whether they had acted "knowingly and willfully" – proof of which is left to the Department of Justice.  *See* Interim Final Rule, 62 Fed. Reg. 7350-01 (Feb. 19, 1997) ("[I]t is not practical for the [OIG] to make an independent determination of the subjective intent of parties based only upon written materials submitted by the requestor."); 42 C.F.R. § 1008.59(a)&(b)("An advisory opinion will state only the OIG's opinion regarding the subject matter of the request….  An advisory opinion issued under this part will not bind or obligate any agency other than the Department [of Health and Human Services]."); Final Rule, 63 Fed. Reg. 38311-01, 38321 (July 16, 1998) (rejecting notion that advisory opinions should be binding on DOJ and stating that "[t]he Department [of Health and Human Services] lacks the authority to bind DOJ through the Department's rulemaking.")  Given the prominent role the AKS assigns the OIG in interpreting and enforcing its terms, it is highly unlikely that Congress contemplated that courts would enforce agreements flagged by the OIG as posing a risk of fraud and abuse.

agreement involved the payment of remuneration. (*See, e.g.*, ECF No. 108 at 13-14.) New legal theories are improper on a motion for reconsideration, especially where, as in this case, there has been no showing of an intervening precedent or other basis for excusing the failure to raise the argument earlier. *See, e.g., Chemical Overseas Holdings, Inc. v. Republica Oriental Del Uruguay*, 2005 WL 927153 *1 (April 20, 2005) ("A party may not advance new facts, issues or arguments not previously presented to the Court. To the extent that counsel seeks to relitigate the underlying motion to permit his client to make new legal or factual arguments, this will not be a proper basis for reconsideration." (internal citation and quotation marks omitted).)

In any event, MedPricer's new argument is not persuasive. The OIG, in its advisory opinions, has stated that "[f]or purposes of the anti-kickback statute, 'remuneration' includes the transfer of anything of value, directly or indirectly, overtly or covertly, in cash or in kind." *See, e.g.,* OIG Advisory Opinion No. 16-10, 2016 WL 6138038, at *3. In *United States v. Narco Freedom, Inc.,* 95 F. Supp. 3d 747, 756 (S.D.N.Y. 2015), the court elaborated on the meaning of remuneration:

> Section 1320a–7b(b) defines remuneration to include "any kickback, bribe, or rebate" and payments "in cash or in kind." Federal courts consistently have held that remuneration is not limited to out-and-out bribes. *See, e.g., Hanlester Network v. Shalala,* 51 F.3d 1390, 1398 (9th Cir.1995) ( "The phrase 'any remuneration' was intended to broaden the reach of the law which previously referred only to kickbacks, bribes, and rebates."); *Klaczak v. Consol. Med. Transp.,* 458 F.Supp.2d 622, 678 (N.D.Ill.2006) ( "Remuneration, for purposes of the AKS, is defined broadly, meaning 'anything of value.' ").

There is no doubt that MedPricer received remuneration in exchange for its services. In its Rule 56(a)(2) Statement it said that its 1.5% fee "is in consideration for the services [MedPricer] provi[d]es." (Pl.'s L.R. 56(a)(2) Stmt., ECF No. 81-2 at ¶ 12.) This is enough to show that MedPricer receives something of value in exchange for its services, which is all that is required to show remuneration. MedPricer's reliance on a statement in a different statute that "[t]he term 'remuneration' *includes* . . . transfers of items or services for free or for other than fair market

5

value," 42 U.S.C. § 1320a-7a(i)(6) (emphasis added), is beside the point, both because it does not apply to the AKS, 42 U.S.C. § 1320a-7a(i) ("For purposes of *this section*, . . . . [t]he term 'remuneration' includes ….") (emphasis added), and because a statement of what a statutory term "includes" is generally considered illustrative, not exhaustive. *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979).

Finally, MedPricer now asserts that it meets the group purchasing organization ("GPO") Safe Harbor requirements, which directly contradicts statements in its summary judgment papers and at oral argument, not to mention the sworn testimony of its witness designated under Fed. R. Civ. P. 30(b)(6).[3] (Def.'s L.R. 56(a)(1) Stmt., ECF No. 68 at ¶ 3; Pl.'s L.R. 56(a)(2) Stmt., ECF No. 81-2 at ¶ 3.) After litigating the case on the basis that it is not a GPO, MedPricer cannot now assert that it is one, both because judicial estoppel bars this last-minute switch and because, as noted, raising new legal theories is improper on a motion for reconsideration.[4] Accordingly, I will

---

[3] MedPricer attempts to show that it complies with the GPO safe harbor requirements by submitting a new affidavit from MedPricer's Controller and annual written disclosures to the hospitals it works with that are intended to satisfy 42 C.F.R. § 1001.952(j)(2). This is improper new evidence, as it is not "truly newly discovered" and "could . . . have been found by due diligence," and thus I will not consider it. *Palmer*, 474 F. Supp.2d at 355.

[4] In its reply brief, MedPricer states that "Second Circuit law is clear that judicial estoppel only applies to positions taken in separate legal proceedings," not to positions taken at different times in the same case. This has not been the law in the Second Circuit for some time. *Intellivision v. Microsoft Corp.* 484 Fed. Appx. 616, 621 (2d Cir. 2012) ("Contrary to plaintiffs' claims, our Court, like the Supreme Court, has recognized that a prior inconsistent representation made in a prior phase of the same case can trigger judicial estoppel." (citing *New Hampshire v. Maine*, 121 S. Ct. 1808 (2001)(judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (internal quotation marks omitted))). The other requirements of judicial estoppel are satisfied here too. First, I relied on MedPricer's representations that it was not a GPO, a point it made in part to emphasize that it was not acting on behalf of the hospitals for purposes of the "arranging" issue discussed in the summary judgment ruling. Second, as Becton points out (ECF No. 102 at 9 & n.5), it has been prejudiced by MedPricer's switch, as it would likely have taken further discovery on whether MedPricer qualified as a GPO had MedPricer not conceded that it did not.

not consider MedPricer's new-found argument that it is a GPO after all, or the new evidence it has submitted in support of that argument with its motion for reconsideration.

## II.     Becton's Renewed Motion for Summary Judgment

Because there was no evidence in the record about whether Children's Hospital of Alabama provides services for which payment may be made under a federal health care program, I denied Becton's Motion for Summary Judgment as to that transaction without prejudice.  I also denied MedPricer's Motion for Summary Judgment on the breach of contract claim (Count One) as to the Children's Hospital transaction, because granting MedPricer's motion would create a risk of inconsistent judgments.  (Order, ECF No. 95 at 20.)  I allowed Becton to submit supplemental evidence related solely to the question whether Children's Hospital provides services for which payment may be made under a federal health care program, and provided MedPricer an opportunity to respond to the filing.

For the same reasons that I granted summary judgment for Becton as to the Barnabas transactions, I grant summary judgment for Becton as to the Children's Hospital transaction. (Order, ECF No. 95.)  I declined to grant Becton summary judgment as to the Children's Hospital transaction because there was no evidence in the record at the time that it provides services for which payment may be made under a federal health care program.  Both Becton and MedPricer have now submitted the contract between Children's Hospital of Alabama and MedPricer, and, like the contract between Barnabas and MedPricer, it explicitly states that Children's Hospital provides services which may be paid for by a federal health care program.  (ECF No. 104 at 1.)  As set forth in my analysis in the summary judgment ruling, that is enough to meet "the minimal requirement of showing that the Contract involved the sale of items for which payment may be made under a federal health care program."  (Order, ECF No. 95 at 17.)

## III.    Conclusion

For the reasons stated above, MedPricer's motion for reconsideration is GRANTED in part and DENIED in part but the relief requested is DENIED. Becton's Renewed Motion for Summary Judgment as to the Children's Hospital transaction is GRANTED. The clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
April 3, 2017